441 So.2d 283 (1983)
James L. JEFFERS, Jr.
v.
Victoria P. HANSEN and Bonaparte's Retreat, Inc.
No. CA-0355.
Court of Appeal of Louisiana, Fourth Circuit.
October 18, 1983.
*285 Bruce C. Waltzer, Fine, Waltzer & Bagneris, New Orleans, for petitioner-appellant.
James E. Swayngim, New Orleans, for petitioner-appellant.
Anthony J. Milazzo, Jr., Kenner, James P. Screen, New Orleans, for defendants-appellees.
Before AUGUSTINE, WARD and WILLIAMS, JJ.
AUGUSTINE, Judge.
Plaintiff James L. Jeffers is the former manager of a French Quarter bar known as Bonaparte's Retreat. The bar is located at 1007 Decatur Street in New Orleans, which premises were, at one time, leased by Bonaparte's Retreat, Inc., whose majority stockholder and secretary-treasurer is Victoria P. Hansen. This dispute arose when Hansen, acting on behalf of the corporation, entered the bar and seized the premises to prevent Jeffers' continued management. Jeffers then filed this suit for injunction and damages against Hansen and the corporation, alleging that Hansen's conduct constitutes trespass and wrongful eviction.
The defendants answered, denying the allegations, and in turn, filed a reconventional demand alleging Jeffers' breach of contract for employment. Following trial on the merits, the trial court rejected plaintiff's principal claims, but, nevertheless, allowed Jeffers to recover certain monies which he had deposited with the defendant corporation pursuant to his contract. Jeffers now prosecutes this appeal, urging that the trial court erred in not recognizing the merit of his principal allegations of trespass and wrongful eviction.

THE CONTRACT
At the center of this controversy is the contract itself, executed by these disputing parties in authentic form on September 30, 1977.[1] The agreement is styled "Contract for Employment" and its terms allow Jeffers the right to operate Bonaparte's Retreat according to the following provisions:
"WHEREAS, Said corporation desires to employ and retain the services of a Manager, and that one James L. Jeffers, Jr. has applied for employment as a Manager of said business known as Bonaparte's Retreat, Inc.
THEREFORE, It is mutually agreed:
1) That effective October 1, 1977 James L. Jeffers, Jr. is employed as Manager of Bonaparte's Retreat, Inc. under the terms and conditions hereinafter set forth:

*286 2) Unless voluntarily terminated or for violation of the provisions of this contract or for violation of the liquor laws and regulations of the State of Louisiana and the City of New Orleans, said employment shall remain in effect until March 14, 1999."
Other provisions called upon Jeffers, as manager, to deposit $3,000 with the corporation, Bonaparte's Retreat, Inc., "for the faithful performance of the contract." The contract further obligated Jeffers to pay to the corporation the sum of $1,000 per month "as revenue, after the payment of all expenses, except monthly rental, but including repairs, maintenance and all licenses, supplies, salaries, etc." (Emphasis added). The contract stipulated that Jeffers "shall be reimbursed monthly for that sum which aggregates net receipts after the payment of the sum guaranteed to the corporation monthly and all expenses of the corporation except rent ..." (Emphasis added). The agreement also bound Jeffers to keep all records of operations and expenses, and to make those records available for inspection by Hansen, the corporate secretary-treasurer. Finally, as incentive for Jeffers' faithful compliance with the contract, Hansen bound the corporation to offer to Jeffers a sublease of the premises occupied by Bonaparte's Retreat in the event that Bonaparte's received permission from the owner of the premises to grant such a sublease.[2]

PLAINTIFF'S ALLEGATIONS
The conduct which gave rise to this litigation occurred on March 24,1978. As of that date, the relationship between Jeffers and Hansen, which had begun smoothly enough six months earlier, had turned antagonistic. For reasons to be stated later in this opinion, Hansen had grown to suspect Jeffers of false dealing with respect to the corporation's revenues. When Jeffers was hospitalized for injuries sustained during an altercation at Bonaparte's, Hansen went to the business premises at 1007 Decatur Street and conducted a first-hand inspection of the corporation's records, which had been kept in Jeffers' possession. Hansen's discoveries convinced her that Jeffers had not faithfully carried out his obligations for some time and, accordingly, she took immediate action, closing the business and changing all locks, thus preventing Jeffers from continuing his alleged course of mismanagement. Shortly afterward, Hansen notified the plaintiff that he was discharged from employment.
Jeffers contends that because his contract with Bonaparte's is a sublease of the premises located at 1007 Decatur Street, and not a contract for employment, Hansen's conduct constituted trespass and unlawful eviction. Plaintiff's argument is founded upon parol evidence regarding his negotiations with Hansen prior to and contemporaneous with the signing of the contract. These negotiations, in plaintiff's view, modify the written agreement and reflect the parties' true intention to perfect a sublease.
According to Jeffers, it had been Hansen's intention from the beginning to duplicate with him the contractual arrangement which had bound Bonaparte's previous managers, two individuals named Herman and Oreck, who had subleased the premises from the corporation with the permission of the owner-lessor. Shortly after Herman and Oreck gave up their sublease and left the business in 1977, Hansen placed an advertisement in a local newspaper offering the bar for a long-term lease. Jeffers responded to the offer and negotiations ensued. At that time, plaintiff contends, Hansen explained to Jeffers the sublease provisions of the former managers' contract and promised that Jeffers' rights and duties concerning the premises and the operation of the business would be the same as theirs. Jeffers acknowledges, of course, that the express terms of his contract do not purport to sublease the premises. Nevertheless, he argues, it was the intention of both parties to circumvent the corporation's lease which, *287 by that time, contained a prohibition against the corporation's sublease of the premises to third parties. Plaintiff asserts that the evidence of Hansen's intent to accomplish indirectly that which could not be done directly (or legally, we might add) is found in that provision of the contract which obligates Jeffers to pay to the corporation a sum of $1,000 per month, in advance, for the privilege of operating the defendant's business. The plaintiff contends that such payment constitutes rent. Finally, it is argued that the last paragraph of the contract (wherein Hansen obligates the corporation to offer a sublease to Jeffers in the event that the owner-lessor remove the prohibition against sublease) is merely a promise to later cast in formal, written terms that which had already been accomplished by the parties' oral agreement.
The issue thus raised is whether parol evidence of agreements made prior to or contemporaneously with the execution of authentic act can be admitted to transform the unambiguous character of the act from a contract of employment to a contract of lease.
The Louisiana Civil Code clearly answers the above question in the negative:
"The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery." Article 2236.
"Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since." Article 2276.
Louisiana courts have consistently interpreted the above articles to mean that in the absence of any claim of fraud, error, or ambiguity in the written instrument itself, the terms of an authentic act are conclusive and cannot be varied or contradicted by parol evidence. Morrison v. Richards, 343 So.2d 375 (La.App. 4th Cir.1977); Weysham v. Aiavolasiti, So.2d 798 (La.App. 4th Cir.1969); Summers v. Summers, Bros. Inc., 385 So.2d 489 (La.App. 1st Cir.1980).
Plaintiff in this action has alleged neither fraud nor error in the formation of the agreement. Nor is the language of his contract ambiguous or susceptible to misconstructionin the clearest terms, the act contains the essential attributes of a contract for employment. It does not purport to be anything else. Accordingly, plaintiff cannot be heard to contradict his own act or to transform it into something which it is not. It follows that Hansen's conduct on March 24, 1978 did not constitute either trespass or wrongful eviction, since Jeffers did not obtain by his contract any recognizable interest in the premises.

DEFENDANT'S ALLEGATIONS
Inasmuch as Jeffers' employment was stipulated by the contract to be for a certain term, his discharge, to be legally justifiable, must be founded upon good cause. Ingram v. Kaiser Aluminum and Chemical Corp., 323 So.2d 921 (La.App. 4th Cir.1975); La.Civil Code Art. 2749. "Good cause" for termination exists when the employee materially breaches specific terms of his contract.
The defendants allege that Jeffers materially breached the contract for employment in several respects:
First, Hansen and the corporation maintain that Jeffers hired personnel whom he allowed to operate the bar without a manager's license, in violation of city ordinance[3] and state law.[4] This violation is alleged to constitute a breach of paragraph 2 of the contract.
Second, defendants contend that Jeffers purchased liquors to be sold at Bonaparte's from a local supermarket rather than from *288 a licensed distributor, and that such conduct also constitutes a violation of city ordinance and state law and is therefore a breach of paragraph 2 of the contract.
Third, it is alleged that Jeffers refused to make all records of operations and expenses available to the corporation, in breach of paragraph 6 of the contract, and moreover, that those records which were made available were knowingly falsified, thus subjecting the corporation to potential liability to city, state and federal tax authorities and jeopardizing the corporation before city and state liquor licensing boards.
The trial court did not render reasons for judgment in favor of the defendant-appellees. We therefore apply the fundamental rule that when a trial court fails to render specific findings of fact, a reviewing court must evaluate the record in a light most favorable to the party who prevailed at trial. Commercial Union Credit v. Stidom, 408 So.2d 285 (La.App. 2d Cir.1981).
With respect to the first of the defendants' allegations, Victoria Hansen testified that on one occasion, she went to Bonaparte's expecting to find Jeffers, only to discover that he was not on the premises, and it appeared that his managerial functions had been assumed by an unlicensed employee named James Majoria. Hansen further testified that no licensed personnel were present during the time that she remained on the premises waiting for Jeffers to return. On other occasions, Hansen said, she telephoned the bar to speak with the plaintiff and was told by Majoria that Jeffers was not in. Following these incidents, Hansen admonished the plaintiff that to allow unlicensed personnel to operate the bar without licensed managers on the premises was a violation of the law and of his contract. According to Hansen, Jeffers dismissed these warnings in the most casual manner. The plaintiff's lack of concern in this regard surfaced at trial when, confronted with the fact that his own records showed Majoria to be regularly employed at the bar, Jeffers responded that, in effect, it was none of the corporation's business whom he hired, and that he had the sole authority in such matters.[5]
Construing the above testimony in a light most favorable to the appellees, we regard it as proven by a preponderance that plaintiff Jeffers breached his employment contract by allowing unlicensed persons to operate Bonaparte's Retreat during the absence of licensed managers, in violation of state law and city ordinance.
With regard to defendant's second contention, that Jeffers breached the contract by purchasing liquor for resale at Bonaparte's from other than a licensed wholesale distributor, the most reasonable reading of the trial record supports the conclusion that the defendants have proved their allegation by a preponderance of the evidence. Hansen testified that at the time she entered the premises on March 24,1978, she discovered in Jeffers' office numerous receipts for liquor purchased in large volumes from a local supermarket on several occasions between October 1977 and March 1978.
Though, at first, the plaintiff denied having purchased the liquor, upon examining the receipts, he admitted that a few were his, and explained that the purchases were for his own personal consumption. He could not convincingly explain, however, why the other receipts were in his office or how they got there, and his overall testimony on this point was discernibly evasive. Given that the volume of liquor represented by the receipts is far in excess of that which reasonably might be consumed by personal use over the course of the period in question, we regard it as sufficiently proven that Jeffers purchased the liquor for resale at Bonaparte's.
Such conduct is prohibited by federal statute, specifically, 26 U.S.C. § 5117,[6] *289 which forbids dealers to purchase liquor for resale from any person other than a wholesaler. The violation of federal law involved in this case does not directly contravene any express provisions of plaintiff's contract, which regards as breach only violations of state or local law. Nevertheless, there is a duty, implied in every contract for employment, to perform in a law-abiding manner and to refrain from activity which will jeopardize the employer in the eyes of the law. Because Jeffers was Bonaparte's primary agent in the management of the bar, his illegal acts were attributable to his principal, the corporation, which was thereby subject to reproval or even prosecution by federal authorities. State and local licensing boards might have considered Jeffers' illegal purchases to be sufficient to revoke Bonaparte's permits. It follows, therefore, that Jeffers' violation of federal law in the performance of his managerial duties presents valid ground for his dismissal.
With respect to whether Jeffers breached the contract by failing to make corporate records available to the secretary-treasurer, Jeffers himself admitted that he persistently refused to relinquish Bonaparte's cash register tapes to Hansen, despite her repeated requests for them. Jeffers admitted that these tapes, which contain a transaction-by-transaction account of Bonaparte's liquor sales, are the only accurate means by which to measure the total volume of sales for any given period, and that they are absolutely necessary to Bonaparte's accurate computation of monthly state and local taxes.
Moreover, the plaintiff admitted that he kept two different sets of records, one for his personal use, and the other marked for submission to Bonaparte's Retreat, Inc. Those which Jeffers kept for himself contained an accurate account of Bonaparte's monthly liquor sales, and were consistent with the figures reported on the cash register tapes which Jeffers maintained in his possession. The records submitted to the corporation, however, were deliberately falsified by Jeffers to reflect a smaller volume of liquor sales. As Jeffers admitted, he did not want Hansen to know how well the bar was doing, for fear that she might fire him in order to manage the successful business herself. The plaintiff's own testimony abundantly proves his failure to perform faithfully a primary obligation of his contract.
Aside from the fact that Jeffers' refusal to submit important corporate records was a direct violation of his contract, his deliberate falsification of records concerning corporate income was a most serious breach of fidelity which, again, subjected the corporation to criminal liability and even the loss of its operating licenses. Considering that Bonaparte's sole reason for being, according to the corporate charter, was the continued maintenance of the bar, it follows that Jeffers' conduct jeopardized the very existence of the corporation. His discharge was unquestionably warranted.
Finally, the question is raised whether the defendants were entitled to "self-help" in closing the bar in order to prevent Jeffers' continued management.
Jeffers asserts that, even if this court were to construe his agreement with the corporation as an employment contract rather than a lease of the premises, Hansen should have proceeded, first, by putting him in default, and second, by instituting an action for dissolution of the contract. Plaintiff finds support for these contentions in La.C.C. Art. 2046, which provides:
"A resolutory condition is implied in all commutative contracts, to take effect, in case either of the parties do not comply with his engagements; in this case the contract is not dissolved of right; the party complaining of a breach of contract may either sue for its dissolution with *290 damages, of, if the circumstances of the case permit, demand specific performance. (Emphasis Added).
We do not consider plaintiff's arguments to have merit. First, regarding the asserted necessity to put Jeffers in default, it is unquestionable that the plaintiff's breaches of contract were active rather than passive. In such instances, the law does not require the obligee to put the breaching party in default. Moreover, it is absurd to speak about putting an employee in default when his wrongful conduct cannot be undone by future performance, however perfect it may be. As it was stated in Jennings-Heywood Oil Syndicate v. Houssiere-Latreille Oil Co., 119 La. 793, 44 So. 481 (1907), "... the sole object of putting in default is to let the obligor know that the obligee desires that he should perform his contract." In the case at bar, that which the employer seeks is not the employee's future performance, but his discharge.
Second, Art. 2046 cannot be interpreted so as to deprive an employer of the right to discharge an employee for cause, yet that would be the result if we were to acknowledge plaintiff's argument. The Civil Code provides a specific remedy for those who are wrongfully discharged:
"If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived." La.C.C. Art. 2749.
By its own terms, Article 2749 presupposes the right of an employer to discharge for cause, and not merely to sue for dissolution of the employment contract. It is for the employee to initiate legal action to remedy his wrongful termination.

CONCLUSION
Finding no error in the proceedings below, we affirm the judgment of the trial court in all respects.
AFFIRMED.
NOTES
[1] The trial court correctly held that Victoria Hansen did not sign the contract in her individual capacity, but rather as secretary-treasurer for Bonaparte's Retreat, Inc.
[2] As of the signing of this contract, the owner of the premises did not allow its lessee, Bonaparte's, to sublease the premises to any third party, that prohibition being contained in Bonaparte's own lease.
[3] Sec. 5-67 of the Code of the City of New Orleans provides that "[No] alcoholic beverage outlet shall operate without someone in attendance with managing authority over such establishments."
[4] La.R.S. 26:71 requires retailers who operate alcoholic beverage outlets to obtain liquor permits from the State of Louisiana. See also Sec. 5-7 et seq., Code of the City of New Orleans.
[5] In fact, the records which Jeffers submitted to the corporation showed Majoria to be only an occasional employee.
[6] 26 U.S.C. § 5117 provides that:

"a) "It shall be unlawful for any dealer to purchase distilled spirits for resale from any person other than
(1) a wholesale dealer in liquors who has paid the special tax as such dealer to cover the place where such purchase is made; or
(2) a wholesale dealer in liquors who is exempt, at the place where such purchase is made, from payment of such tax under any provision of this chapter; or
(3) a person who is not required to pay special tax as a wholesale dealer in liquors."