569 So.2d 1056 (1990)
Annie L. HOPKINS, Plaintiff-Appellee,
v.
Theresa TRAVASOS, Defendant-Appellant.
No. 89-585.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1990.
*1057 Sandoz & Sandoz, Gordon Sandoz, II, Abbeville, for plaintiff-appellee.
*1058 Sonnier, Hebert & Hebert, Charles Sonnier, Abbeville, for defendant-appellant.
Cooper, Ortego & Woodruff, Calvin Woodruff, Jr., Abbeville, for defendant-appellee.
Before FORET, DOUCET and KNOLL, JJ.
KNOLL, Judge.
Theresa Travasos appeals the judgment of the trial court which found her strictly liable to Annie L. Hopkins for personal injuries Hopkins received when she fell through concrete steps located at the rear of one of Travasos' rental houses. The trial court awarded Hopkins $11,614.18 damages and dismissed Travasos' third-party demand against Mary Broussard, the lessee of Travasos' rent house where Hopkins was injured.
Travasos contends on appeal that the trial court erred: (1) in finding that the concrete steps presented an unreasonable risk of harm; (2) in failing to find that the lessee, Broussard, was the legal custodian of the steps; (3) in finding Travasos failed to maintain the standard of conduct of a reasonable prudent lessor; (4) in failing to find comparative fault on the part of Hopkins; and, (5) in awarding excessive damages. We affirm.

FACTS
Travasos leased her house and lot to Broussard. Travasos, the owner of approximately fifty rental houses in the Abbeville area, leased the house next door to Hopkins, Broussard's sister. On June 12, 1987, Hopkins walked to Broussard's house where she visited for a while with Broussard and another sister.
Hopkins testified that she exited Broussard's house from the rear and as she placed her weight, stipulated at trial to be in excess of 300 pounds, on the top step, the concrete steps collapsed. Although no one witnessed the accident, Broussard said she heard Hopkins scream and went to her aid. Broussard found Hopkins lying on the ground with her legs through the concrete steps. Broussard's family helped transport Hopkins to Abbeville General Hospital where she was referred to her family physician for treatment. Hopkins' two family physicians and an orthopaedist treated her regularly for the next year.

LIABILITY
Travasos contends that the trial court erroneously found her liable to Hopkins. Travasos asserts two errors in the trial court's determination of liability: (1) she was not the custodian of the leased premises; and (2) Hopkins failed to prove that the concrete steps presented an unreasonable risk of harm.
Hopkins asserted in her petition for damages that Travasos was liable to her under theories of negligence and strict liability. In its written reasons for judgment the trial court analyzed the facts under both theories of liability and concluded that Hopkins had successfully carried her burden of proof under strict liability as enunciated in LSA-C.C. Art. 2322. Implicit in the trial court's determination is a finding that it did not conclude that Travasos was negligent.
Our review of the trial court's decision is governed by the manifest error rule. Without reiterating this well known standard, we refer to Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990), for an excellent discussion of appellate review and the viability of the "manifest error" rule. We are aware of the manifest error rule and the constraints imposed thereby.
In Sistler, the Supreme Court also stated:
"In an action asserting strict liability as grounds for recovery, the plaintiff bears the burden of proving 1) the thing which caused damages was in the care, custody and control of the defendant; 2) the thing had a vice or defect which created an unreasonable risk of harm; and 3) the injuries were caused by a defect. LSA-C.C. art. 2317; Loescher v. Parr, 324 So.2d 441 (La.1975). These general principles are contained in LSA-CC. art. 2317, which provides: `We are responsible, not only for the damage occasioned by our own act, but for that which is *1059 caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.' Succeeding article 2322 then references the modifications applicable to the owner of a building: `The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.'" (Footnote omitted.)
In the case sub judice, Travasos argues that the trial court erred in finding that she was the custodian of the steps.
As part of its explanation of strict liability, in Sistler the Supreme Court stated:
"Legal fault, the first element of the plaintiff's case under articles 2317 and 2322, arises out of the legal relationship between the defendant and the person or thing whose conduct or defect creates an unreasonable risk of injuries to others. Loescher, supra; Entrevia v. Hood, 427 So.2d 1146 (La.1983). The fault of the owner is based upon his failure to prevent the building for which he is responsible from causing such an unreasonable risk of injury to others. Id. Rather than the loss falling upon some innocent third person, the loss resulting from the creation of the risk falls upon the person to whom society allots its care, custody or control (guarde) [sic]. See Id. The rationale is the owner is in a better position than the innocent victim to detect, evaluate and take steps to eliminate an unreasonable risk of harm which arises from the thing. King v. Louviere, 543 So.2d 1327 (La.1989); Ross v. La Coste de Monterville, 502 So.2d 1026 (La. 1987)."
In the present case, Travasos admits that she is the owner of the premises where the steps collapsed, but she attempts to shield herself from liability by arguing that her lessee, Broussard, was actually the person who had the care, custody, and control of the steps. We disagree.
"The obligation of every property owner to answer for damages for a failure to keep his property in such condition of repair that it will not be dangerous to other persons is imposed by law, by articles 670, 2315, and 2322 of the Civil Code." Klein v. Young, 163 La. 59, 111 So. 495 (1927). See also Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1979). In Klein, the Louisiana Supreme Court held that, even though the owner of a building could contractually allow another person to use the property for any particular purpose, and could regulate the rights and liabilities between the owner and contracting occupant, the owner could not by such contract evade his legal obligation to repair harm to others resulting from defects in the premises. Therefore, applying this well entrenched principle of law, we find no merit to Travasos' argument that she was not the custodian of the property at issue.
Travasos next argues that the trial court erred in finding that the concrete steps posed an unreasonable risk of harm to others.
Again referring to Sistler, our Supreme Court stated:
"The second element of strict liability requires the plaintiff prove the vice or defect of the thing is a condition which poses an unreasonable risk of harm to others. The dangerous aspect of the thing must be unreasonable. Reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing.
The unreasonable risk criterion cannot be applied mechanically. This criterion is a concept employed to symbolize the judicial process of deciding which risks are encompassed by the codal obligations from the standpoint of justice and social utility. Reaching an intelligent and responsible decision of whether a risk is unreasonable involves consideration of moral, social and economic values as well as the ideal of justice." (Citations omitted.)
In its written reasons for judgment the learned trial judge stated:

*1060 "Not every minor imperfection or irregularity will give rise to strict liability. The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Koppie vs. Commercial Union Insurance Company, 478 So.2d 179 (La.App. 3d Cir. 1985), writ denied, 479 So.2d 922 (La. 1985).
Among the factors to be considered in determining whether a condition is unreasonably dangerous is the ease with which it may be observed by the potential victim. Poe vs. State Farm General Ins. Co., 360 So.2d 634 (La.App. 3d Cir. 1978).
In this case the utility of the concrete steps must be balanced against the gravity of the risk and likelihood that harm might occur from the use of the steps.
* * * * * *
Although plaintiff admitted that she was aware these steps were not new, she added that no defects were detectable upon observing them.
Jesse Broussard [Travasos' maintenance employee] testified that the steps were in good condition and no cracks were visible on them.
Plaintiff's brother-in-law stated he did not see any cracks in the steps before plaintiff's fall. Although he admitted that some wires were visible in the cement prior to the accident.
This testimony leads this Court to conclude that plaintiff established the existence of an unreasonable risk of harm which caused her damages."
In analyzing Travasos' argument on appeal concerning this issue, as well as her third assignment of error that she acted as a reasonably prudent owner, she relies upon the fact that the steps did not exhibit any defects and that her maintenance personnel regularly inspected the steps.
The owner is absolved from its strict liability neither by his ignorance of the condition of the building, nor by circumstances that the defect could not easily be detected. He is absolved from such liability only if the thing owned by him fails, not because of its defect, but rather because of the fault of some third person or of the person injured thereby, or because the fault is caused by an irresistible cause or force not usually foreseeable. Olsen, supra, and cases cited therein.
Based upon the law and the evidence presented, we cannot say that the trial court erred in finding that the steps posed an unreasonable risk of harm. See: Crawford v. Wheless, 265 So.2d 661 (La.App. 2nd Cir.1972); Matranga v. Hilman, 94 So.2d 568 (La.App. 2nd Cir.1957).
In an ancillary assignment of error, Travasos contends that the trial court erred in dismissing her third-party demand against her lessee, Broussard. In her third-party demand, Travasos contended that Broussard knew or should have known about the defective condition of the steps and negligently failed to notify Travasos of the need to replace them.
We find no error in the trial court's dismissal of Travasos' third-party demand against Broussard. The evidence preponderates that the defective condition of the steps was latent. Travasos' repairman noticed no observable crack in the steps and neither did Hopkins. On this basis, there is no evidence to support Travasos' claim that Broussard was negligent in failing to report the cracked condition of the steps.

COMPARATIVE FAULT
Travasos contends that the trial court erred in failing to assess Hopkins with some degree of comparative fault. Travasos asserts, "... Hopkins failed to exercise this due care by not recognizing the potential danger of her excessive weight ... The force exerted by such a weight upon the steps obviously attributed to their ruin. The uneventful inspection of the steps at the time of the incident by defendant and her maintenance personnel, coupled with the durability of concrete, can only lead one to conclude that Ms. Hopkins' weight was a contributing cause in the collapse of the steps." We disagree.
*1061 Hopkins was also a lessee of Travasos. Hopkins testified that she traversed similar concrete steps at her house and had used her sister's steps without difficulty on numerous occasions through the years. Considering the latent defect of the steps, we cannot say that the trial court erred in finding Hopkins free of comparative fault.

QUANTUM
Travasos contends that the trial court award of $10,000 general damages to Hopkins was excessive.
In the assessment of damages in cases of quasi-offenses much discretion must be left to the judge or jury. Perniciaro v. Brinch, 384 So.2d 392 (La.1980). Factors which are considered in assessing quantum for pain and suffering are the severity and duration thereof. LeBleu v. Dynamic Indus. Constructors, 526 So.2d 1184 (La.App. 3rd Cir.1988), writ denied, 528 So.2d 154 (La.1988). A determination of the measure of damages will not be disturbed on appeal unless the trier of fact abuses its much discretion in making the award, and then only to the extent of lowering it or raising it to the highest or lowest point which is reasonably within the discretion afforded to the trial court. Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986). Nevertheless, the burden of proving the existence of damages and the causal connection between them and the delictual act rests with the plaintiff. Such proof must be shown by a preponderance of the evidence. A mere possibility is not sufficient. Meyers v. Imperial Cas. Indem. Co., 451 So.2d 649 (La.App. 3rd Cir. 1984).
Hopkins testified that when the steps collapsed on June 12, 1987, she fell to the ground, crying and screaming for help. Mary Broussard, Hopkins' sister, testified that when she got to the back door of her house, she saw Hopkins on the ground, bleeding around the ankles.
Hopkins' family took her by truck to Abbeville General Hospital. Unable to pay for the hospital services, Hopkins was taken to Dr. Crackower's office for examination and treatment. Although Dr. Crackower did not testify, Hopkins stated that Dr. Crackower X-rayed her leg and ankle, and sent her home with instructions to elevate the leg.
On June 19, 1987, Hopkins consulted Dr. Kate Lee, a family practitioner. By stipulation of counsel, Dr. Lee's letter report was introduced into evidence in lieu of her testimony. Dr. Lee's report shows that she found tenderness at the L1-5 level with attendant muscle spasms, and X-rays of the lower back, left ankle, left wrist, and left forearm were negative for fracture. Dr. Lee treated Hopkins with diathermy and analgesics. Dr. Lee said that Hopkins presented herself again on June 23, 1987, with severe back pain and insomnia. On July 7, 1987, Hopkins complained to Dr. Lee of severe back pain and leg pain. Because of the leg pain, Dr. Lee admitted Hopkins to Abbeville General Hospital where she tested positive for thrombophlebitis in the left leg. Dr. Lee hospitalized Hopkins for the next six days and treated the thrombophlebitis with IV fluids, Heparin and Coumadin. Upon her release from the hospital, Dr. Lee's diagnosis was active thrombophlebitis of the left leg, status-post contusion of the back, contusion of the left leg, and left elbow.
Dr. Lee again examined Hopkins on July 17, and July 23, 1987, for continued leg pain and tenderness. On September 17, 1987, Hopkins complained to Dr. Lee of severe back pain and left leg pain. A CT scan of the lumbar spine showed bulging of the L5-S1 annulus with questionable spinal stenosis at L5. At this juncture, Dr. Lee referred Hopkins to Dr. John E. Cobb.
By stipulation, Dr. Cobb's letter reports were admitted into evidence. Dr. Cobb, an orthopaedist, examined Hopkins on November 11, 1987. His overall impression was that Hopkins suffered a post-traumatic lumbar pain syndrome. He recommended injections into the back. Re-examination on December 21, 1987, and February 8, 1988, showed little improvement because of the injections.
On Dr. Cobb's recommendation, Hopkins received physical therapy from February *1062 10, 1988, to March 10, 1988. The physical therapist's report shows that he found that Hopkins had a decreased range of motion, her lumbar spine and sacrum were tender to palpation, and she ambulated with a halting gait. On Dr. Cobb's recommendation, physical therapy was discontinued because it did not seem to help relieve Hopkins' condition. Dr. Cobb was unable to foretell either the extent or duration of Hopkins' injury.
At the time of trial, Hopkins testified that she still had constant pain in the low back, especially when she sits or stands for long periods of time, and that her legs get numb. As a result of her pain, Hopkins testified that she can no longer walk any distance, and she is unable to do housework like she did prior to her fall.
After carefully analyzing the record in light of the jurisprudence outlined hereinabove, we find that the trial court did not abuse its wide discretion in awarding Hopkins $10,000 in general damages.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Travasos.
AFFIRMED.