626 So.2d 49 (1993)
Thomas HINTON
v.
Charles HOPKINS D/B/A Hopkin's Landing.
No. 92 CA 2312.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
Angelo J. Piazza, Marksville, for plaintiff-appellant.
James C. Dewey, New Roads, for defendant-appellee.
Before EDWARDS, CRAIN and LeBLANC, JJ.
CRAIN, Judge.
This is an appeal from a judgment in a personal injury action. Charles Hopkins is the owner of Hopkins[1] Landing (Landing). The Landing consists of a boat launching facility and a building built on piers which houses a bait shop and a bar. The launch, bait shop and bar are operated by Dewitt A. Smith who allegedly leases the premises from Hopkins. The building faces a gravel parking lot. The river is to the rear of the building. The only entrance to the building is through the front door. A set of steps come from the front left of the building which leads to a landing or porch which is in turn connected to a second set of stairs which lead directly to the front door. The bottom step rests flat on the ground while the top of the stairs is nailed to the side of the porch or landing.
On the morning of July 3, 1988, Thomas Hinton was allegedly injured while climbing the stairs to enter the bait shop at the Landing. Hinton instituted this action against Charles Hopkins D/B/A Hopkins Landing. After a bench trial on the merits, judgment was rendered in favor of defendant. From this judgment plaintiff appeals. The sole assignment of error is that the trial court erred in not holding Hopkins strictly liable under La.C.C. art. 2322.
The trial court made no specific findings of fact and did not address the issue of liability pursuant to La.C.C. art. 2322 nor did it reach the issue of damages. Under these circumstances a reviewing court must view the evidence in the light most favorable to the party who prevailed at trial and in affirmance of the judgment. Homer National Bank v. Springlake Farms, Inc., 616 So.2d 255 (La. App. 2d Cir.1993); Jeffers v. Hansen, 441 So.2d 283 (La.App. 4th Cir.1983).
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction." La.C.C. art. 2322.
La.R.S. 9:3221 provides as follows:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable *50 for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
Our Supreme Court has determined that La. R.S. 9:3221 was enacted to:
relieve the owner of some of the burdens imposed on him by law in cases where he has given dominion or control of his premises to a tenant under a lease, for the Act permits the owner to transfer his legal liability by contract to his lessee insofar as it may pertain to injuries received by third persons who come on the property by license or invitation of the lessee. But this statutory grant to the owner is not absolute. Indeed, the statute expressly limits his contractual right to be absolved to those cases in which he was not aware of the defect causing the injury or was unable to know of it.
Gilliam v. Lumbermens Mutual Casualty Co., 240 La. 697, 124 So.2d 913, 916 (1960) (citations omitted).
Appellant relies solely on La.C.C. art. 2322 and would have us read out La.R.S. 9:3221 entirely. However, in Rivet v. LeBlanc, 600 So.2d 1358 (La.App. 1st Cir.), writ denied, 605 So.2d 1115 (La.1992), this court applied La.R.S. 9:3221 to absolve an owner/lessor of liability for a defective step of which defect the lessor had no knowledge and thereby upholding a lease provision by which the lessee assumed responsibility for the condition of leased premises. See also Van Buren v. Continental Insurance Co., 522 So.2d 1326 (La.App. 2nd Cir.), writ denied, 524 So.2d 522 (La.1988); Fontan v. Estopinal, 529 So.2d 1330 (La.App. 5th Cir.), writ denied, 533 So.2d 17 (La.1988); Dufrene v. Kaiser Aluminum and Chemical Corp., 572 So.2d 771 (La.App. 4th Cir.1990). Cf. Hopkins v. Travasos, 569 So.2d 1056 (La.App. 3d Cir. 1990) (La.R.S. 9:3221 was not at issue. The holding was based on application of La.C.C. art. 2322).
Assuming that Hinton was actually on the steps when the stairs separated and assuming that he was injured when the stairs fell or separated from the building (which determinations we do not specifically make) the trial court must have found that Hopkins was relieved of liability pursuant to La.R.S. 9:3221. To arrive at this conclusion the trial court implicitly found: Hopkins and Smith had a lessor-lessee relationship; Smith assumed responsibility for the condition of the premises whereby Hopkins would not be liable to third parties for injuries caused by defects therein; and Hopkins neither knew nor should have known of the defect, nor had he received notice of such and failed to timely remedy it.
Dewitt A. Smith testified that he leases the building and boat launch from Hopkins; he operates the bait shop and bar; he pays Hopkins no rent; and Hopkins gets no income from the bar and bait shop. However, Hopkins gets the income from the vending machines, pin ball machines, pool tables, and other coin operated machines which are located in the building. Smith entered the lease agreement with Hopkins in 1981 and immediately prior to that the building had been completely renovated, and the stairs newly built.
Smith stated he did not see the alleged accident, but immediately afterwards stepped outside to survey the damage to the stairs. He observed that the stair unit had pulled loose and separated from the fascia board by which it was nailed to the porch. The stair unit slid away straight back from the building and landed flat on the ground. Smith repaired the unit by renailing it to the fascia board on the side of the porch. He did not need to replace any boards because none were rotted or damaged. They were constructed of 2 × 12 treated lumber.
Smith stated Hopkins was responsible for maintaining the parking lot. Keeping the leased premises repaired was Smith's responsibility. Regarding an agreement pursuant to La.R.S. 9:3221, Smith was queried and responded as follows:
Q. Now, when asked about the arrangement between you and Mr. Hopkins, I believe your testimony was and I wrote it down here, "I run his Hopkins Landing, which he owns".

*51 A. He owns the property; yes.
Q. Okay. And are you here today to tell us that if this place is in wrecks or ruins or if there's problems with it that you're responsible for that?
A. I repair it; yes.
Q. Are you responsible for that; is that what you're telling us?
Q. So, you will get on the stand and if there's liability in a civil case, you understand that you could become the victim of a lawsuit, if you ultimately take that responsibility; do you understand that?
A. Yes.
Q. You're still willing to take the stand and take that bullet and say that you were the one responsible for these steps?
A. Yes.
Q. Have you and Mr. Hopkins talked about this case?
A. Notnot at any length. He called me and told me towe had to be in Court today.
Q. And what did he tell you about the case?
A. He didn't know anything about it.
Q. All right. Did he discuss with you your testimony?
A. Not really.
Q. Y'all didn't talk about it?
A. Uh-uh.
Smith testified that the stairs appeared to be in good condition on the day of as well as the days preceding the alleged accident. He had just climbed them right before Hinton's alleged accident. He had no reason to believe there was anything wrong with them because he inspected them regularly and there had never been any reason to replace them.
Hopkins stated he has owned the Landing since 1941; he leases the building and boat launch to Smith; Smith is not charged rent; Hopkins collects and receives the income from all coin operated machines and the pool tables; and Smith receives no income from the bar and bait shop. He stated that he visits the Landing 3-4 times per week; the stairs are used regularly by deliverymen to cart cases of beer and supplies into the building; and there had never been any problem with the stairs. Hopkins further stated that under the terms of the lease Smith was responsible for maintaining the building at Smith's cost. Any major renovations required Hopkins' permission and Hopkins would pay for major repairs only, e.g., re-roofing. Smith told Hopkins about the alleged accident the day after it allegedly occurred. By the time Hopkins arrived at the Landing to view the stairs, Smith had already repaired them. Hopkins inspected the stairs; they were not rotted; no boards needed replacing; and they only required renailing to the porch.
Based on a reading of La.R.S. 9:3221, a review of the jurisprudence in which it is applied, and based also on the credibility and factual issues which the trial court apparently resolved in favor of defendant, we find no error in the trial court's judgment. See Homer National Bank v. Springlake Farms, 616 So.2d at 259.
For the foregoing reasons, we affirm the trial court judgment. Costs are assessed against appellant.
AFFIRMED.
NOTES
[1] Plaintiff spells the business name Hopkin's Landing and defendant spells it Hopkins (no apostrophe) Landing.