^ARMSTRONG, Judge.
This is an appeal from the dismissal of a third-party demand for contribution, tort *1015 indemnity and contractual indemnity following a maritime accident. The third-party plaintiff presents a number of alternative arguments on appeal. However, based upon the testimony of both the appellant’s employees and the appellee’s employees, it is apparent that the trial court, as finder of fact, reasonably could conclude that the appellee’s work was not involved in the accident and that, therefore, neither contribution, tort indemnity nor contractual indemnity was owed. Consequently, we cannot find that the trial court was clearly wrong/manifestiy erroneous as to the dis-positive factual issue and so we will affirm.
The original plaintiffs, who are not involved in this appeal, filed suit against the original defendant and third-party plaintiff Callón Offshore Production, Inc. (“Cal-lón”). Callón operates a gas field, with several wells, offshore in state waters of the State of Alabama. The original plaintiffs were injured when the shrimp boat they were aboard struck a well in the Gallon field. They alleged that the collision, which occurred at night, was caused because the well was unlit. They also alleged that Callón was liable due to the alleged failure to have the well marked with a light.
The Callón field had a main platform and five separate well platforms. The five well platforms were some distance from, but in sight of, the main platform. 12CaIlon normally manned the field with three persons. Two of those persons were Callón employees referred to as “operators.” The third person, referred to as a “roustabout,” was provided to Callón by a contractor which was third-party defendant Liberty Services, Inc. (“Liberty”). On the date of the accident, and for most of the prior week, there was only one Callón operator on duty, Keith Easterling. On the date of the accident, and for the prior week, the Liberty roustabout was Todd Sheridan.
After the accident in question, and after the original plaintiffs sued Callón, Callón filed a third-party demand against Liberty seeking contribution, tort indemnity and contractual indemnity. As to the contractual indemnity claim, the contract between Callón and Liberty, a Master Service Agreement (“MSA”) provides that Liberty will provide certain specified indemnity to Callón as to claims “arising out of or from the work to be performed” under the contract.[1]
The key issue is which party, Cal-lón or Liberty, had the responsibility for maintaining in proper operating condition the lights on the well platforms. These lights are referred to as “navigation aids” or “navaids.”
Keith Easterling, the Callón operator on duty on the date of the accident and during the week before the accident, testified as follows:
Q Mr. Easterling, isn’t it true that as an operator in the North Dauphin Island field, it was |3your job to make sure that wells were lit and did not pose a hazard to maritime transportation?
A Yes, sir.
*1016 [[Image here]]
Q All right. The night of January 31, 1996, you didn’t instruct the Liberty employee, Todd Sheridan, to do the visual inspection of the navaid lights that night, did you?
A Personally tell him before I went to bed to do it?
Q That is correct.
A No, sir.
Q And you agree it is not Todd Sheridan’s job to do the navaid light inspection?
A It is not his responsibility.
Q It is only his responsibility if you tell him to do it.
A Correct.
* * *
Q I just want to make clear that it was your job to do the maintenance and inspection of the navigational aids in the N.D.I. field, is that right?
A It is my responsibility.
Q And that is not Todd Sheridan or Shane Phillips’ responsibility to do the navigational aid inspection, is that right?
LA Right.
Q You wouldn’t rely on anyone else to do your job, would you?
A No, sir.
* * *
Q I just want to make sure I understand your testimony. At no time did you order or instruct Todd Sheridan to do the navigational aid inspection on January 31, 1996, is that correct?
A Correct.
* * *
Q And you told me in your deposition that we took just last week, that it was not part of Todd Sheridan’s job to inspect and maintain the navaids at any time on January 31, 1996, is that correct?
A It is not his responsibility. No, sir.
Q Not his job, right?
A To inspect?
Q Right. The navaids. Is that correct?
A It is not his responsibility.
Q Not his responsibility, is that right?
A Correct.
Q It is your responsibility.
A Correct.
John Lewis, Callon’s assistant offshore superintendent, who had some degree of responsibility for the Callón field, testified as follows:
IbQ I want to ask you some specific questions. Am I correct that it was not part of the Liberty hands’ jobs to inspect or maintain the navaids, is that right?
A That is correct.
Todd Sheridan, the Liberty roustabout on duty on the date of the accident and during the week before the accident, testified as follows:
Q Had you ever been told by any of your supervisors to inspect the wells to make sure the navaid lights were working?
A No. I have been asked did I see one working but I haven’t been told to inspect them.
[[Image here]]
Q Todd, have you ever been told that it is part of your job to do navaid maintenance?
A No.
Q Were you ever told that it was part of your job to do navaid inspections? A No.
Q Were you ever given the responsibility to do navaid inspections or maintenance?
A No. I have been asked. I mean—
Q If you were asked to do it, you would do it?
A Yes.
*1017 Q And that would be the end of it?
A Yes.
[fiQ And that would be a one time deal? A Yes.
Q Do you know how to maintain a navaid?
A No.
Q You were never taught how to do that?
A All I was ever taught was to cover up the sensor during the daytime. I watched them do that, the Callón operators and then light would come on. As far as working on them, no.
Q Did anyone every order you or instruct you to do a navaid inspection on the night of January 31, 1996?
A No.
Based upon the above-quoted testimony and the other evidence in the record, the trial court had ample grounds to find, as a matter of fact, that it was Callón, rather than Liberty, which had the responsibility to monitor the navaids. The trial court did not give any Reasons For Judgment. “[W]hen a trial court fails to render specific findings of fact, a reviewing court must evaluate the record in the light most favorable to the party who prevailed at trial.” Jeffers v. Hansen, 441 So.2d 283, 288 (La.App. 4th Cir.1983). Accord Revel v. Snoiv, 95-462 (La.App. 3 Cir. 11/2/95), 664 So.2d 655, 659, writ denied, 95-2820 (La.2/2/96), 666 So.2d 1084; Homer National Bank v. Springlake Farms, Inc., 616 So.2d 255, 258-59 (La.App. 2nd Cir.1993); Hinton v. Hopkins, 626 So.2d 49 (La.App. 1st Cir.1993).[2] Also, of course, we review the trial court’s findings of fact under the clearly wrong/manifestly erroneous standard. E.g., Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173. Thus, we may not disturb the trial court’s findings of fact so long as they are reasonable. Id. The trial court reasonably could have concluded that Liberty’s work did not include the navaids and, therefore, no contribution or tort indemnity was owed and the contractual indemnity clause is not applicable.
For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.

LANDRIEU, J., concurs in the result.
McKAY, J., concurs with the result.

. There is great controversy between the parties as to whether the M.S.A. § applies to the work in the present case because that work was done in Alabama and the M.S.A. § states that all work done under it will be done in the State of Louisiana. While the present case was pending, and after Callón had filed its third party demand against Liberty, but before service of that third party demand, Cal-lón sent to Liberty for Liberty’s execution an amendment to the M.S.A. § which provided that the M.S.A. § would also apply to work in Alabama and that the amendment would be retroactive in effect. Liberty, unaware of the third-party demand, executed the amendment. Liberty sirgues that, if they had known of the third-party demand, they would not have executed the amendment because they did not have insurance coverage for the contracted indemnity involved, and that the amendment was obtained by fraud and/or due to error. We need not resolve this issue because, as we will discuss below, we believe that the trial court reasonably could conclude that the accident did not "arise out of or from” Liberty’s work.

. The parties requested below that the trial court issue written Reasons For Judgment, see La.Code Civ. Proc. art. 1917, but the trial court did not do so. The proper remedy in such a situation is either to seek supervisory writs to order the trial court to issue written reasons or to move for remand. Hester v. Hester, 96-0189 (La.App. 4 Cir. 9/11/96), 680 So.2d 1232, 1236. However, neither party in the present case sought writs or moved for remand.