619 So.2d 719 (1993)
Sharon MOORE
v.
ST. BERNARD PARISH POLICE JURY.
No. 92-CA-1148.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 1993.
Salvador E. Gutierrez, Jr., Mary Ann Hand, Gutierrez & Hand, Chalmette, for plaintiff/appellee.
Thomas P. Anzelmo, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, for defendant/appellant.
*720 Before SCHOTT, C.J., and ARMSTRONG, PLOTKIN, WALTZER and LANDRIEU, JJ.
SCHOTT, Chief Judge.
This case arose out of an accident in which the plaintiff, a deputy sheriff of St. Bernard Parish, tripped and fell on the front lawn of a girls' group home owned and operated by the defendant, St. Bernard Parish Police Jury. The trial court rendered judgment in plaintiff's favor for the damages she sustained and the defendant appealed. The key issue is whether the hole or depression in which plaintiff fell constituted an unreasonable risk of harm so as to make the defendant liable to plaintiff under LSA-C.C. art. 2317.
On the evening of September 17, 1989, plaintiff was on patrol when she was dispatched to investigate a disturbance with broken glass at the Group Home. When she arrived there, she parked her automobile on the street in front of the home and ran across the lawn to the front door. After bringing the situation under control, she exited the front door intending to return to her car the way she came, across the lawn. However, just as she stepped onto the lawn, she tripped in a hole and fell.
There was a paved walkway or sidewalk leading from the front door of the home to the driveway and a parking lot on the side of the home. This driveway and lot were well lighted, but the front of the home where plaintiff fell had little, if any, illumination. Investigation disclosed that the hole in the lawn was really a depression caused by the tires of the group home's van which had been parked there for unloading supplies.
In reasons for judgment the trial judge found that plaintiff fell in the muddy tracks which were made by the home's employees while delivering supplies; that there were no lights on the area; and that defendant had knowledge of the defect since it was created by its own employees. But, he also assigned fifty percent of the fault to plaintiff based upon the following reasoning:
Instead of parking in the lighted parking lot and walking on another provided walkway, Ms. Moore chose to park in the street and walk across the front lawn. When leaving she walked out the exact same area she came in. Had she observed the area when she came in or been looking where she was going, she would have seen the hole. She admitted she did not have a flashlight. The evidence preponderates to the fact that she backed off the sidewalk and stepped in the hole. Therefore, the Court assigns plaintiff 50% fault for this accident.
The trial court did not make a specific finding that this hole constituted an unreasonable risk of harm for the plaintiff, but for our purposes we assume that he made this finding by implication. While this finding is entitled to great deference on appeal, we have resolved to reverse it because it is clearly wrong.
The standards for the review of this case are found in Landry v. State, 495 So.2d 1284 (La.1986). There the court considered whether a hole near the seawall on the New Orleans lakefront constituted an unreasonable risk of harm for the plaintiff who had been catching crabs and who was walking with a hamper and crab nets in his arms when he stepped into a hole and fell. After an extensive discussion of the doctrine of strict liability and related jurisprudence, the court focused on whether the plaintiff met the unreasonable risk of harm test. The court noted that this partially hidden hole was located immediately beside the seawall where anyone stepping from it would place a foot; that the hole was in a recreation area used by thousands; that the plaintiff was engaged in conduct he had every legal right to pursue, recreation which is pursued by thousands. The court observed: "The potential for harm is great because the area is heavily used at all hours by adults and children. This particular defect is located in a spot where foot traffic would probably be frequent." Id. at 1288.
The facts of the instant case stand in sharp contrast. The path plaintiff took when she fell was across a lawn in the dark *721 instead of the walk to the drive which was safe and intended to accommodate persons like the plaintiff. It was not unreasonable for the defendant not to insure that the lawn was free of depressions and holes which might present a hazard for someone who would voluntarily traverse the lawn in the dark instead of taking the walkway. Plaintiff argues that she was justifiably and rightfully in a hurry because she was responding to an emergency, but she fell on the way out, after the situation was under control and at a time when she freely chose to traverse the darkened lawn. The trial judge divided responsibility between the parties noting that plaintiff chose to walk across the lawn instead of using the walkway. It follows from this fact that the hole in the darkened lawn was not an unreasonable risk of harm for the plaintiff who really had no good reason to go across the lawn in the dark.
Accordingly, the judgment appealed from is reversed and set aside and there is judgment in favor of defendant, St. Bernard Parish Police Jury, and against plaintiff, Sharon Moore, dismissing her suit at her cost.
REVERSED.
PLOTKIN, J., concurs with written reasons.
WALTZER, J., dissents.
PLOTKIN, Judge, concurring with written reasons:
Although I agree with the majority's ultimate conclusion reversing the trial court judgment and finding the defendant, St. Bernard Parish Police Jury, not liable for the plaintiff's injuries under the strict liability doctrine, I would assign the following additional reasons.
The proper inquiry to determine whether a defendant should be found strictly liable for a plaintiff's injuries is whether the condition which caused the injuryin this case, the "muddy hole" in the grassy area in front of the group homepresented an unreasonable risk of injury. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La.1990); Entrevia v. Hood, 427 So.2d 1146 (La.1983); Hughes v. Green, 609 So.2d 991 (La.App. 4th Cir.1992). That determination in turn is dependent on whether the harm presented by the defendant's premises is unreasonable to a "reasonable and ordinary [plaintiff] exercising ordinary care." Scroggins v. Sewerage & Water Board, 533 So.2d 132 (La.App. 4th Cir.1988).
Although the majority in the instant case does conclude that the plaintiff, Sharon Morse, acted unreasonably in choosing to traverse the grassy area in front of the group home rather than walking along the sidewalk provided as egress to the home, the opinion fails to clarify the significance of that finding. In point of fact, that finding in itself is not significant to determination of whether the defect in the defendant's premises actually presented an unreasonable risk of harm. The relevant inquiry is whether the defect was unreasonable when considered in light of the actions of a reasonable plaintiff. Therefore, a determination that a plaintiff acted unreasonably does not necessarily preclude a concurrent finding that the defendant's premises presented an unreasonable risk of harm. The two questions do not necessarily go hand-in-hand since both the plaintiff and the defendant may have acted unreasonably. The majority's conclusion that the plaintiff acted unreasonably is relevant only to whether the plaintiff should be assessed some percentage of comparative fault, provided the defendant was found independently liable.
What the majority should have considered is whether the hole presented an unreasonable risk of harm to a plaintiff acting reasonably under the circumstances. For many of the reasons cited by the majority in determining that the plaintiff acted unreasonably, I would conclude that the hole did not present an unreasonable risk of harm to a reasonable person because a reasonable person would not have walked across that grassy area at night without a flashlight.
The determination of whether a given condition involves an unreasonable risk of harm requires a balancing of factors, including *722 "the probability and gravity of the harm presented by the risk against the social utility of the defendant's conduct or the thing involved." Scroggins, 533 So.2d at 135. The probability and gravity of the harm presented by the hole in question, described in the record as a depression caused by the tires of the group home's van, was minimal to a person exercising ordinary care since the defendant provided a safe method for egressing the group home by way of the sidewalk, which would have been used by a reasonable person in the plaintiff's position. Additionally, requiring a public body to maintain an area like the one where the plaintiff's accident occurred in a "perfect" condition, i.e. without any holes, would not serve the public good and would have only limited social utility.
Accordingly, I agree with the majority conclusion reversing the trial court judgment, but for the reasons assigned hereinabove.
WALTZER, Judge, dissenting.
I disagree with Judge Schott's opinion for the following reasons.
I believe that the "muddy hole", in the middle of the defendant's front lawn, at night and without illumination constituted a defect under LSA-C.C. article 2317. Furthermore, I agree with the trial court that the plaintiff proved by a preponderance of the evidence that the group home had either constructive or actual notice of the hole prior to the her fall, thereby fulfilling the requirements of LSA-R.S. 9:2800.
The situation of this case is governed by LSA-C.C. article 2317. That article states, in pertinent part:
We are responsible, not only for the damages occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications. LSA-C.C. Art. 2317.
This Court, our Supreme Court, as well as other circuit courts have all defined a defect as something posing an unreasonable risk of injury to persons exercising ordinary care and prudence. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106 (La.1990); Fox v. Housing Authority of New Orleans, 605 So.2d 643 (La.App. 4th Cir.1992).
Judge Schott writes in his opinion that the trial judge's comments regarding the unreasonableness of the plaintiff in traversing the lawn at night, and not keeping a proper lookout somehow establishes that the hole was not a defect. I view the trial court's conclusions of whether a defect existed and the reasonableness of the plaintiff's actions as two separate determinations: the former determines whether the defendant is liable under our law of strict liability, the latter determines whether, and how much, the plaintiff's damages should be adjusted for her own negligence. The determination of a thing as a defect is not dependant on the reasonableness of the injured plaintiff. The two are mutually exclusive. It is entirely possible, and in fact probable, that a thing, posing an unreasonable risk of harm to persons exercising ordinary care, causes harm to a person who was not acting with the utmost prudence.
This Court, citing our Supreme Court, has previously stated that the unreasonable risk of harm rule cannot be applied mechanically, but rather serves as a guide for trial courts in evaluating a certain condition and the risks it imposes. In determining whether a defect existed, a trial court should weigh several considerations including the gravity of the risk, the individual and societal rights and obligations, and the social utility involved. Fox v. Housing Authority, supra at 645 [citing Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106 (La.1990); Entrevia v. Hood, 427 So.2d 1146 (La.1983), reh. den. (March 25 1983); Hopkins v. Travasos, 569 So.2d 1056 (La.App. 3rd Cir.1990); Kuck v. City of New Orleans, 531 So.2d 1142 (La.App. 4th Cir.1988)].
In the present case, several witnesses testified that there was a depression about six inches deep and extending several feet in width and length on the defendant's *723 front lawn. No one denies that the "muddy hole" existed. Furthermore, the trial judge found as a matter of fact that, more probably than not, the flood lights, which would have illuminated the lawn, were not on at the time of plaintiff's fall. The police officers who investigated the area after the accident, testified that they could not see the depression without their flashlights.
While the group home provided a paved parking area and walkway, supposedly free of defects, I cannot hold that a person walking across the lawn is unreasonable or not prudent. The other two officers who testified stated that they had both taken the same exact path as plaintiff. Ms. Clivens, an employee of the group home testified that she too walked the same path and had tripped over the same depression. Furthermore, groceries were delivered by people traversing the front lawn. The photographs submitted into evidence clearly show that the shortest route to the home would be between a car parked in the street and across the lawn. Anyone in a hurry or carrying packages would naturally park in the street and take such a route.[1] A six inch depression, at night, in the dark, in the middle of that pathway could be considered a defect under C.C. Art. 2317.
The fact that this particular plaintiff was not very reasonable in walking backwards onto the lawn proves her own comparative negligence. However, such lack of reason does not disprove the fact that a defect existed. In this case, the plaintiff's negligence factors into the causation analysis, and not the strict liability analysis, of the case.
For these reasons, I would affirm the trial court judgment holding the defendant strictly liable, but finding the plaintiff 50% at fault for her fall.
NOTES
[1] All three officers who testified stated that they had been to the group home on numerous occasions, and that they all, depending on which direction they were coming from and how big of a hurry they were in, had parked in front of the home and walked across the lawn.