900 So.2d 925 (2005)
Wandalia LITTLEFIELD
v.
IBERIA BANK and Zurich Insurance Company.
No. 04-CA-1334.
Court of Appeal of Louisiana, Fifth Circuit.
March 15, 2005.
William W. Rosen, Lawrence Blake Jones, New Orleans, Louisiana, for Plaintiff/Appellant.
David Shaw, Metairie, Louisiana, for Defendant/Appellee.
*926 Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA, and WALTER J. ROTHSCHILD.
SOL GOTHARD, Judge.
Plaintiff herein, Wanda Littlefield, appeals a ruling of the trial court that granted summary judgment in favor of defendants, Iberia Bank and Zurich Insurance Company, and dismissed the action. For reasons that follow, we affirm.
Ms. Littlefield filed this slip and fall action for damages sustained in a fall on the premises of defendant Iberia Bank. The petition alleges Ms. Littlefield tripped on a recently renovated and undesignated incline as she exited the bank. The petition named Iberia Bank (bank) and its insurer, Zurich Insurance Company as defendants. The matter was joined, and in due course, defendants filed a motion for summary judgment. After consideration, the trial court granted the motion and dismissed plaintiff's action. It is that judgment on appeal to this court.
This designated record contains the attachments to the memoranda both in support of and opposition to the motion for summary judgment. One of the attachments is the deposition of plaintiff, Wandalia Littlefield. In the deposition, Ms. Littlefield related that she went to the bank on July 3, 2002, to withdraw some money in preparation for a trip she was taking. She had been in that bank two or three times before and the weather on this day was fine. She entered the bank through the front door by way of the ramp. On her way in she did not notice anything unusual about or any foreign substance on the ramp. Ms. Littlefield stated that as she exited the bank, she saw the pea gravel cement ramp and did not perceive any problems with the ramp. She further stated that she is not sure what caused her to fall, but said "it felt like somebody pushed me into the parking lot with a great force somehow." She denied that anyone was near her when she fell and also stated that she had no prior problems with the shoes she was wearing at the time of the fall. Ms. Littlefield stated that she did not know why she fell, but she thinks it was because of the ramp. She fell forward out into the parking lot, injuring her knees, elbows and hands. She also had pain in her chest, back and neck. After the fall, a gentleman approached and told Ms. Littlefield to remain still and that he would go into the bank and call an ambulance. Two employees from the bank came out to assist her.
Defendants attached the Affidavit of Dwain Gannard, Vice President and Bank Manager for the bank, in which he states that he has worked at the location for eighteen years and there have been no other incidents or accidents in this area. Further, there have been no complaints about the ramp during that time. The ramp is painted safety yellow and white, and has been maintained since its installation. His affidavit supports Ms. Littlefield's testimony that the day of the accident was clear with no weather problems and that the ramp was clean and free of foreign substances.
Defendants also presented the Affidavit of Fred Vanderbrook, a professional engineer with expertise in the field of safety, lighting, ramps and code standards relative to the Parish of Jefferson. He testified that he personally inspected the ramp in question and found no irregularities in the surface that would likely cause a tripping hazard. He further found that the asphalt surface of the ramp provided excellent traction for normal usage and that the area was brightly lit and easy to negotiate. Mr. Vanderbrook opined that the ramp was very visible to anyone paying attention because it is painted in bright *927 traffic yellow and blue paint. The geometry of the ramp is good, with a gradual slope down to the parking area and the dimensions are well defined by the paint. There are no code violations in the location or design of the ramp and it does not present an unreasonable risk of harm to pedestrians.
There are several photographs of the area and they depict the ramp as described by defendants' expert and the bank manager. It shows an asphalt ramp, clearly marked and gradually sloped from the sidewalk to the parking lot, with no obvious hazards.
In opposition to the motion for summary judgment, plaintiff attached the deposition of Dwain Gannard, the manager of the bank, who testified, as he did in his affidavit, that he has been at this bank location for eighteen years. He also testified that for the last seven years the bank has employed a facility management department to maintain the files of repairs, renovations or construction. He acknowledged that the only repair of which he has personal knowledge is the washing and repainting of the ramp, which is done often. Mr. Gannard stated that on the day of the incident, he had just left the bank and was in his car when he was called back inside. An accident report was made by bank employees regarding Ms. Littlefield's fall.
Also attached is an affidavit from Trent D. Gleason, who is the Customer Service Manager at the bank. In the affidavit, Mr. Gleason states that he was told by a customer that someone had fallen outside of the bank and he went to investigate. In the course of his investigation, he took a statement from a witness to the fall and wrote a formal accident report on the incident. The statement from the witness, Nathan E. Caston, is attached to the affidavit. It states that he was going to the ATM machine when he saw Ms. Littlefield fall suddenly forward and hit the ground, using her hands and elbows to break her fall. She immediately turned over onto her back to relieve the pressure on her knees. The edge of the ramp caught her shoe which caused her to fall.
Plaintiff offers the deposition of defendant's expert, Fred Vanderbrook, in which he elaborates on issues attested to in his affidavit. Mr. Vanderbrook pointed out that Ms. Littlefield's fall was a "trip" as opposed to a "slip." He explained that when a person slips, they tend to fall backwards and with a trip, they tend to fall forward. The ramp in question measured about 3 inches in height and 39 inches in length. There was one crack that basically followed an expansion joint in the sidewalk and ran through the ramp to the parking lot. Mr. Vanderbrook stated that the crack was in the area where Ms. Littlefield said she tripped. Mr. Vanderbook also stated that it is possible that someone wearing sandals could have tripped at that spot. However, he also stated that the crack was smaller than½ inch and was not a tripping hazard.
La. C.C.P. Art 966 B provides that summary judgment should be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." The burden of proof on a motion for summary judgment is set forth in La. C.C.P. Art 966 C(2) as follows:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, *928 or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
The appellate standard of review of a judgment rendered on a motion for summary judgment is one of de novo review. Duplantis v. Cadillac Fairview Shopping Center, 04-984 (La.App. 5 Cir. 1/11/05), 894 So.2d 393. Accordingly, we will determine whether the trial court's grant of summary judgment in the matter before us is correct by conducting a de novo review of the evidence in light of the applicable law.
In 1996, the legislature made a fundamental change to the burden of proof in these cases with the adoption of La. C.C. Art. 2317.1, and an amendment to La. C.C. Art. 2322. La. C.C. Art 2317.1 provides in pertinent part:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
La. C.C. Art. 2322 as amended provides in pertinent part as follows:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
Under the law as it exists now, in addition to causation elements, a plaintiff asserting a cause of action in either negligence or strict liability must prove the following elements; (1) that the defendant knew or should have known of the vice or defect, (2) that the damage could have been prevented by the exercise of reasonable care, and (3) that the defendant failed to exercise such reasonable care. Duplantis v. Cadillac Fairview Shopping Center, supra. If the plaintiff fails to prove any one of these elements, the claim fails. Dauzat v. Thompson Const. Co., Inc., 02-989 (La.App. 5 Cir. 1/28/03), 839 So.2d 319.
In the matter before us, plaintiff argues the trial court erroneously granted the summary judgment and assigns six errors. Three relate to the question of whether material facts remain to be decided. One error questions the trial court's reliance on the expert testimony. One asserts that additional discovery remains, and one questions the validity of one of the affidavits used in support of defendant's motion for summary judgment.
Because plaintiff must show that there are material issues of fact remaining to be decided, we will consider those issues first. In the first argument plaintiff argues that the matter should have gone to a trial in order for a jury to see the photographs of the site. Plaintiff asserts the photos are definitive in showing the plaintiff's position. We have reviewed the photos and disagree that they are definitive in any way. The photos show no obvious hazards and give credence to defendant's expert testimony that the ramp was clearly *929 marked and maintained. Further, a review of the plaintiff's account of the accident shows that she is unable to testify as to the cause of her fall. She stated that she is unclear what caused the fall and it felt like someone "pushed her."
On a de novo review of the record, we find the photographs and the testimony of the plaintiff is sufficient to show there are no material issues of facts remaining to be decided and we find the trial court was correct in granting summary judgment. Accordingly, we pretermit further discussion of plaintiff's arguments.
For reasons herein, we affirm the decision of the trial court and assess costs of this appeal to plaintiff.
AFFIRMED.