STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-608


JOHN S. DAVIS

VERSUS

AMERICAN LEGION HOSPITAL


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF ACADIA, NO. 80784,
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.


AFFIRMED.

Bob Broussard
D. Patrick Daniel, Jr.
Attorneys at Law
Post Office Drawer 80827
Lafayette, Louisiana 70598-0827
(337) 232-3333
Counsel for Plaintiff/Appellant:
    John S. Davis

Timothy W. Basden
Breaud & Lemoine
Post Office Drawer 3448
Lafayette, Louisiana 70502
(337) 266-2200
Counsel for Defendant/Appellee:
    American Legion Hospital

SULLIVAN, Judge.

John S. Davis appeals the dismissal of his personal injury action against American Legion Hospital ("the Hospital") on summary judgment. For the following reasons, we affirm.

**Factual and Procedural Background**

Mr. Davis filed suit against the Hospital, alleging that he injured himself on the evening of September 10, 2002, when he fell after stepping off a sidewalk near the emergency room entrance. In his deposition, Mr. Davis testified that, because the main entrance of the hospital was locked when he arrived between 9:30 and 10:00 p.m. to visit his daughter and newborn granddaughter, he had to walk around the building to a side door. He explained that, as he stepped off the sidewalk to take a shortcut through a grassy area, he stepped on or near a storm drain and fell forward, landing on the sidewalk. In an affidavit, Gary Lacaze, the risk management administrator for the Hospital, described the grassy area where Mr. Davis fell as a thin strip of grass located between the building and the sidewalk that was not considered to be a pedestrian walkway. According to Mr. Lacaze, the Hospital was not aware of anyone having walked in that area and it had never received a report of anyone claiming to have fallen there. Mr. Lacaze further stated that there was a lighted sidewalk between the two entrances that went directly to the door that Mr. Davis wished to enter and that the storm drain cover, which was inspected after Mr. Davis' fall, was not broken or dislodged. Mr. Lacaze explained that the purpose of the storm drain was to draw water away from the building and take it beneath the sidewalk through an underground drainage pipe.

The Hospital filed a motion for summary judgment based upon Mr. Davis' deposition and Mr. Lacaze's affidavit, arguing that Mr. Davis would not be able to

demonstrate that either the sidewalk or the storm drain presented an unreasonable risk of harm. Mr. Davis responded by arguing that a genuine issue of fact existed as to whether the grading of the drainage surface was improper, based upon Mr. Davis' allegation that the grassy area near the storm drain was "uneven." The trial court granted the motion for summary judgment, finding no evidence in support of the allegations that the grading around the storm drain was defective. Mr. Davis then filed a motion new trial, arguing that new evidence in the form of photographs demonstrated that a defective condition existed. The trial court denied the motion for new trial without comment. On appeal, Mr. Davis contends that the trial court erred in granting summary judgment, arguing that evidence that the area around the storm drain was "uneven" created a genuine issue of material fact and that the question of whether it was reasonable for Mr. Davis to step off the sidewalk should be decided after trial on the merits.

**Opinion**

Appellate courts review summary judgments de novo, applying the same criteria as the district courts in determining the appropriateness of summary judgment. *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So.2d 131. As provided in La.Code Civ.P. art 966(B), summary judgment should be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." The burden of proof on a motion for summary judgment is set forth in La.Code Civ.P. art. 966(C)(2) as follows:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential

elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

Louisiana Civil Code Article 2317 provides in part: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by . . . the things which we have in our custody. This, however, is to be understood with the following modifications." Under La.Civ.Code art. 2317.1 (emphasis added):

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, *vice, or defect*, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

"Under this provision, in order to recover for damages, a plaintiff must prove: (1) the thing was in the defendant's custody and control; (2) *the thing contained a defect which presented an unreasonable risk of harm to others*; and (3) the defendant knew or should have known of the defect." *Roberson v. Lafayette Oilman's Sporting Clays Shoot, Inc.*, 05-1285, p. 5 (La.App. 3 Cir. 4/12/06), 928 So.2d 703, 705-06 (emphasis added). The claim must fail if the plaintiff fails to prove any one of these elements. *Littlefield v. Iberia Bank*, 04-1334 (La.App. 5 Cir. 3/15/05), 900 So.2d 925, *writ denied*, 05-876 (La. 5/13/05), 902 So.2d 1032.

"Furthermore, not every minor imperfection or irregularity will give rise to . . . liability. The defect must be of such a nature to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances." *Amest v. City of Breaux Bridge*, 01-1034,

3

p. 3 (La.App. 3 Cir. 12/12/01), 801 So.2d 582, 584-85 (quoting *LeJeune v. Riviana Foods*, 97-1091, p. 3 (La.App. 3 Cir. 2/18/98), 707 So.2d 1038, 1040, *writ denied*, 98-749 (La. 5/1/98), 718 So.2d 418).

Additionally, in *Baker v. State, through Department of Health & Human Resources*, 05-808, pp. 5-6 (La.App. 3 Cir. 2/1/06), 921 So.2d 1209, 1213 (citations omitted), this court provided the following analysis for consideration in deciding whether a condition poses an unreasonable risk of harm:

> In order to decide what constitutes an unreasonable risk of harm, the fact finder must weigh the social utility of the thing versus the likelihood and severity of harm. Whether or not the defect posed an unreasonable risk of harm must be decided on the particular facts and circumstances of the case.

For use of this analysis on summary judgment, *see, e.g.*, *Smith v. The Runnels Schools, Inc.*, 04-1329 (La.App. 1 Cir. 3/24/05), 907 So.2d 109, and *Reitzell v. Pecanland Mall Assocs., Ltd.*, 37,524 (La.App. 2 Cir. 8/20/03), 852 So.2d 1229.

In the present case, it is undisputed that the Hospital provided a lighted sidewalk for access to the doors that Mr. Davis sought to enter. Mr. Davis acknowledged in his deposition that the sidewalk was free from any obstructions or defects. Possibly for a shortcut, Mr. Davis chose to leave that sidewalk and step onto a grassy area that was not considered to be a pedestrian walkway. The photographs that Mr. Davis introduced in support of his motion for a new trial show that grassy area to be a narrow strip of grass located between the sidewalk and the building. The photographs also demonstrate that, by stepping off the sidewalk, Mr. Davis would have saved only one or two steps than had he remained on the sidewalk as it made a ninety-degree turn to the entrance doors.

4

In *Moore v. St. Bernard Parish Police Jury*, 619 So.2d 719 (La.App. 4 Cir.), *writ denied*, 625 So.2d 1035 (La.1993), the fourth circuit reversed a trial court judgment in favor of the plaintiff to conclude that a depression in the lawn of a group home did not create an unreasonable risk of harm to the plaintiff who fell while exiting the home by crossing the lawn, where there existed a paved walkway or sidewalk providing access to the home's front door. In reaching this conclusion, the court stated:

> The path plaintiff took when she fell was across a lawn in the dark instead of the walk to the drive which was safe and intended to accommodate persons like the plaintiff. *It was not unreasonable for the defendant not to insure that the lawn was free of depressions and holes which might present a hazard for someone who would voluntarily traverse the lawn in the dark instead of taking the walkway. . . .* The trial judge divided responsibility between the parties noting that plaintiff chose to walk across the lawn instead of using the walkway. It follows from this fact that the hole in the darkened lawn was not an unreasonable risk of harm for the plaintiff *who really had no good reason to go across the lawn in the dark*.

*Id*. at 720-721 (emphasis added).

Similarly, in *Blackwell v. Bossier Parish School Board*, 32,383 (La.App. 2 Cir. 12/8/99), 747 So.2d 1248, the second circuit also reversed a trial court ruling in favor of a plaintiff who fell after taking a shortcut rather than using the "safe way" that the defendant provided to enter and leave the building. In that case, the plaintiff, a concession stand worker at a high school football game, chose to leave the concession area by stepping on a piece of plywood that had been placed over a muddy area rather than by using a pathway that ran from the rear door of the concession area to a sidewalk. The court noted that "[t]he [defendant] provided a safe way for workers to enter and leave the concession building. At no time was the path plaintiff took to the

ramp ever intended by the [defendant] to be a route to leave the building or access the stadium." *Id*. at 1251.

In the present case, the photographs in the record support Mr. Lacaze's statement that the grassy area where Mr. Davis fell was not intended to be a pedestrian walkway, as well as the Hospital's contention that it provided a paved sidewalk to access the entrance that Mr. Davis sought. The social utility of locating a drain in that grassy area was explained by Mr. Lacaze, who stated that its purpose was to divert storm water from the side of the building into an underground drainage pipe beneath the sidewalk. Based upon this showing, we find that the Hospital, as the mover on summary judgment, met its burden of showing that the drain, which presumably required some slope in the grass surrounding it for it to function, did not create an unreasonable risk of harm. Mr. Davis has not come forward with any evidence to support his allegation that the drain or the grading around it was otherwise defective. On this record, we find that summary judgment was properly granted.

**Decree**

For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Plaintiff/Appellant, John S. Davis.

**AFFIRMED.**

6