# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-1184


ETHAN ROSE, ET UX.

VERSUS

LIBERTY MUTUAL FIRE INSURANCE CO., ET AL.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2011-6781-B
HONORABLE JULES DAVIS EDWARDS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, James T. Genovese, and Shannon J. Gremillion, Judges.


**REVERSED AND REMANDED.**


**Genovese, J., concurs in the result.**

**Brad J. Brumfield**
**Law Offices of Keith S. Giardina**
**9100 Bluebonnet Centre Blvd., Suite 200**
**Baton Rouge, LA 70809**
**(225) 293-7272**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
> **Liberty Mutual Fire Ins. Co.**
> **Doerle Food Services, L.L.C.**

**Blaine Barrilleaux**
**Attorney at Law**
**330 Settlers Trace, Suite B**
**Lafayette, LA 70508**
**(337) 406-8759**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
> **Ethan Rose**
> **Mecca Rose**

**SAUNDERS, J.**

Ethan and Mecca Rose (hereinafter collectively "Plaintiffs") appeal from the trial court's grant of summary judgment in the favor of Liberty Mutual Fire Insurance Company and Doerle Food Services, L.L.C. (hereinafter collectively "Defendants"). For the following reasons, we reverse the judgment of the trial court and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Ethan Rose (hereinafter "Ethan") was an employee of Saia Motor Freight (hereinafter "Saia"). On December 22, 2010, Ethan was delivering items for Saia to Doerle Food Services, L.L.C. (hereinafter "Doerle"). In order to transfer the shipment from the truck to Doerle's warehouse, a bridge must be created from the warehouse to the truck by pulling a chain to extend a metal docking plate across the gap from the warehouse floor to the truck. On the date of the accident, when the docking plate was extended to form the requisite bridge, it did not lie flat, but rather had a large hump at the hinge of the flap. Ethan attempted to pull a pallet jack, which was loaded with freight, over the hump. The pallet jack was caught on the hump and became stuck. Ethan attempted to pull the stuck pallet jack over the hump. The docking plate was wet and muddy. As he pulled, he slipped and fell to the ground, injuring his neck and back, which necessitated medical treatment.

On November 21, 2011, Plaintiffs filed a petition for damages against Doerle and its insurer, Liberty Mutual Fire Insurance Company. On February 27, 2015, Defendants filed a Motion for Summary Judgment, alleging that "plaintiff cannot prove that the alleged coned dock plate presents an unreasonable risk of harm," asserting that the defect in the dock was open and obvious.

Following a hearing, on August 17, 2015, the trial court granted Defendants' motion. In its reasons for judgment, the trial court stated:

This court finds that a properly functioning dock ramp has great social utility and an improperly functioning dock ramp has no social utility. The complained condition is an improperly functioning dock ramp. An improperly functioning ramp which contains a 392 pound flap has a great likelihood to cause significant harm to the human body. This ramp allegedly requires the application of weight in order to properly deploy. The evidence indicates an operator must walk on the ramp from the warehouse into the truck in order to properly deploy the ramp. If that action fails to. . . remove the peak or bump formed at the hinge between the flap and the main ramp plate, it is not apparent or obvious that the application of the additional weight of the palletized load will not remove that peak or bump. Thus, this was not an obvious hazard. There is evidence that an adjustment of spring tension with a crescent wrench would have caused the ramp to function properly. This court finds that to be a minimal cost. This court also finds that the plaintiff was engaged in the unloading of a trailer. The unloading of goods from a trailer to a warehouse is an activity that has the same social utility as the provision of a properly functioning dock ramp from the warehouse to the trailer. Similarly the improper unloading of a trailer has no social utility.

To be an unreasonable risk of harm the alleged defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. This plaintiff was allegedly injured after he stranded a loaded pallet jack on the ten inch hump, cone, peak or bump formed at the hinge between the flap and the main ramp plate, and then pulled the pallet jack with the intent of getting it over this hump, and he slipped on the wet and muddy ramp, fell and allegedly injured his back and shoulder. There is evidence that the plaintiff was aware of the wet and muddy conditions of the ramp. This court finds that an ordinary prudent person would not attempt to resolve the problem of the stranded pallet in this manner.

Plaintiffs appeal from the grant of summary judgment in Defendants' favor.

## ASSIGNMENTS OF ERROR

Plaintiffs assert the trial court erred:

1. in considering Ethan's actions, in examining whether there were extenuating circumstances, and in concluding there was no social utility in delivering freight in its application of the risk-utility balancing test; and

2. in its deviation from *Broussard v. State of Louisiana, Office of State Buildings*, 12-1238 (La. 4/5/13), 113 So.3d 175.

## SUMMARY JUDGMENT STANDARD

On appeal, the trial court's resolution of a summary judgment motion is reviewed de novo. *Hunter v. Lafayette Consol. Gov't*, 15-401 (La.App. 3 Cir. 11/4/15), 177 So.3d 815. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). The motion "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). The mover bears the burden of proof. La.Code Civ.P. art. 966(D)(1).

However, if the burden of proof at trial does not rest with the mover, the mover must not "negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* The burden then shifts to the non-movant "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

## DISCUSSION

In their Motion for Summary Judgment, Defendants assert that there is no genuine issue of material fact regarding whether the un-level docking plate presented an unreasonable risk of harm. They do not deny that the docking plate did not lie flat, but assert that the risk created was "open and obvious to all." They further assert that the "manner [Ethan unloaded] his truck. . . had no social utility and was inherently dangerous." In order to affirm the trial court's grant of summary judgment, we must find that Plaintiffs produced no evidence to controvert Defendants' assertions. On the record before us, we are unable to

3

conclude that Defendants established a right to judgment in their favor as a matter of law. We find that Plaintiffs submitted evidence that establishes that genuine issues of fact remain, precluding summary judgment in Defendants' favor. Thus, we find the trial court erred, reverse the judgment of the trial court, and remand for further proceedings.

## Applicable Law

Plaintiffs' suit is rooted in La.Civ.Code arts. 2317, which provides that: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody[,]" and 2317.1, which provides that: "The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."

As this court has explained in *Davis v. American Legion Hospital*, 06-608, pp. 3-4 (La.App. 3 Cir. 11/2/06), 941 So.2d 712, 714-15:

> "Under [these] provision[s], in order to recover for damages, a plaintiff must prove: (1) the thing was in the defendant's custody and control; (2) *the thing contained a defect which presented an unreasonable risk of harm to others*; and (3) the defendant knew or should have known of the defect." *Roberson v. Lafayette Oilman's Sporting Clays Shoot, Inc.*, 05-1285, p. 5 (La.App. 3 Cir. 4/12/06), 928 So.2d 703, 705-06 (emphasis added). The claim must fail if the plaintiff fails to prove any one of these elements. *Littlefield v. Iberia Bank*, 04–1334 (La.App. 5 Cir. 3/15/05), 900 So.2d 925, *writ denied*, 05–876 (La. 5/13/05), 902 So.2d 1032.3
>
> . . . .
>
> Additionally, in *Baker v. State, through Department of Health & Human Resources*, 05-808, pp. 5-6 (La.App. 3 Cir. 2/1/06), 921 So.2d 1209, 1213 (citations omitted), this court provided the

following analysis for consideration in deciding whether a condition poses an unreasonable risk of harm:

> In order to decide what constitutes an unreasonable risk of harm, the fact finder must weigh the social utility of the thing versus the likelihood and severity of harm. Whether or not the defect posed an unreasonable risk of harm must be decided on the particular facts and circumstances of the case.

Whether a defect constitutes an unreasonable risk of harm is an inquiry into whether the defendant breached a duty and is, thus, is a question of fact. *Broussard*, 113 So.3d 175. Four factors have been have been devised to determine whether a particular defect presents an unreasonable risk of harm: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature." *Id.* at 184.

We are mindful

> not [to] incorporate the plaintiff's comparative fault into the analysis of whether a defect presents an unreasonable risk of harm. The only consideration to be given to the plaintiff's activities in the determination is the social utility of the activity and whether the activity is dangerous by nature. . . . [T]he plaintiff's knowledge of the defect and considerations such as the extent of the risk created by the actor's conduct are more appropriate considerations for apportioning comparative fault pursuant to Louisiana Civil Code article 2323. *Broussard*, 113 So.3d at 188-189, 193. As stated by the court, "The open and obvious inquiry. . . focuses on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim's actual or potentially ascertainable knowledge." *Broussard*, 113 So.3d at 188. Accordingly, while a plaintiff's knowledge of the defective condition may warrant an allocation of comparative fault, *his awareness of the risk is not a factor in determining whether the defect presents an unreasonable risk of harm.*

*Kennett v. Dep't of Pub. Works ex rel. City of Bogalusa*, 13-824, p. 12 (La.App. 1 Cir. 12/27/13)(unpublished opinion)(emphasis added)(Crain, J.,concurring).

5

In evaluating the fourth prong in the analysis, "'the extent of the risk created by the [actor's] conduct' and 'extenuating circumstances which might require the actor to proceed in haste' are more appropriate considerations for the fact-finder when apportioning fault among all responsible parties." *Broussard*, 113 So.3d at 193. Whether a defect presents an "unreasonable risk of harm is not measured by any carelessness of the plaintiff in disregarding that risk." *Beckham v. Jungle Gym, L.L.C.*, 45,325, p. 9 (La.App. 2 Cir. 5/19/10), 37 So.3d 564, 569.

**Analysis**

Neither Plaintiffs nor Defendants argue that the trial court erred in its analysis of factors one and three. Thus, we confine our discussion to factors two and four. In brief, Defendants assert in support of their contention that the defect was "open and obvious" and that "[n]o evidence exists that anyone had ever fallen because of a coned dock plate at Doerle." However, while the absence of prior injuries is a factor to be considered, it does not preclude a finding that a defect presented an unreasonable risk of harm. *Broussard*, 113 So.3d 175. Additionally, Ray Landry, Doerle's maintenance and sanitation manager, testified that "[t]here's a lot of [jacks] that get stuck."

In further support of Defendants' assertion that the defect was "open and obvious," they note that "the height differential is ten inches over an area that is meant to be flat." However, in opposition to Defendants' motion, Plaintiffs submitted the report of G. Fred Liebkemann, IV, P.E., a mechanical engineer, who indicated that the steel plates used to form the bridge are very large, over 83 inches long and weighing 392 pounds. Over such a large area, the slope or bulge is more gradual and less noticeable. Although the defect may have become "open and obvious" to Ethan at the time the pallet jack became stuck, considering the height differential over such a large area, it was not necessarily "apparent to all who

6

encounter the dangerous condition." *Broussard*, 113 So.3d at 188. Thus, we find Plaintiffs submitted sufficient evidence to create a genuine issue of material fact regarding whether the defect was "open and obvious to all who encounter it[.]" *Id.* at 184.

Next, Defendants assert that "the undisputed facts demonstrated [Ethan's] manner of unloading his truck. . . had no social utility and was inherently dangerous." They note that Ethan testified that he tried "with all his might" to pull the pallet jack over the hump once it became stuck. The trial court agreed, explaining an "ordinary prudent person would not attempt to resolve the problem of the stranded pallet in this manner."

First, we note that Defendants argument focuses on the particular way Ethan unloaded the freight. That focus is grossly misplaced. The pertinent inquiry is whether the activity is "dangerous by nature," not whether the particular manner in which it was done is dangerous. *Kennett*, 13-0824. Consideration of the plaintiff's particular activities is wholly inappropriate in an analysis of whether a defect presents an unreasonable risk of harm and such is a "more appropriate consideration[] for the fact-finder when *apportioning fault* among all responsible parties." *Broussard*, 113 So.3d at 193 (emphasis added). Unloading freight is not "dangerous by nature" and has much social utility. Modern society and business could not function without it.

Moreover, Mr. Liebkemann explained that "[t]he operator lowers the ramp to the bed of the trailer by walking up the ramp incline." Then, if there is a peak at the hinge, a second chain is pulled and the operator then steps on the ramp. Then, "[t]he operator's body weight will lower the main plate of the ramp into alignment." Thus, the evidence indicates that the application of weight to the ramp is necessary to properly deploy it and that, if the bulge remains, the application of

7

additional weight will remedy the defect.  Therefore, it was not unreasonable for Ethan to believe that the application of the additional weight from his body and the pallet jack would level the ramp.  In fact, applying additional weight was exactly what was supposed to be done to level the dock plate.  Further, being that pallet jacks become stuck often, it was not unreasonable for Ethan to conclude that he would be able to maneuver the pallet jack off the bulge.  Nonetheless, it is not appropriate in the unreasonableness inquiry to consider "the extent of the risk created by [Ethan's particular] conduct." *Kennett*, 13-0824, p. 12.

Such belongs in an analysis of comparative fault.  While the particular way he unloaded the freight may warrant an allocation of comparative fault at a later stage of the proceeding, it is wholly irrelevant in an inquiry into the unreasonableness of the condition itself when considering a motion for summary judgment.

## DISPOSITION

Considering the foregoing, we find Plaintiffs have submitted evidence to controvert Defendants' motion and create a genuine issue of material fact.  Thus, we reverse the trial court's grant of summary judgment in Defendants' favor and remand the suit for further proceedings.  Costs of the appeal are assessed to Defendants.

**REVERSED AND REMANDED.**

8