# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-342


**BRITTENY CHENET**

**VERSUS**

**ST. EDWARDS LIMITED PARTNERSHIP, ET AL.**


**\*\*\*\*\*\*\*\*\*\***

SUPERVISORY WRIT FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 131,961
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN D. SAUNDERS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and John D. Saunders, Judges.


**WRIT DENIED.**

**Bart Bernard**
**Carl J. Rachal**
**Meagan M. Smith**
**Bart Bernard Personal Injury Law Firm**
**1031 Camellia Boulevard**
**Lafayette, LA 70508**
**(337) 989-2278**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
     **Britteny Chenet**

**D. Scott Rainwater**
**Claire E. Sauls**
**Taylor, Wellons, Politz & Duhe, APLC**
**8550 United Plaza Boulevard, Suite 101**
**Baton Rouge, LA 70809**
**(225) 387-9888**
**COUNSEL FOR DEFENDANT/APPLICANT:**
     **St. Edwards Limited Partnership**
     **Edwards Holding, LLC**

**SAUNDERS, Judge.**

Defendants-Relators, St. Edwards Limited Partnership and Edwards Holding, LLC, (Relators) seek supervisory writs from the judgment of the Sixteenth Judicial District Court, the Honorable Lewis H. Pitman presiding, which denied Relators' motion for summary judgment.

## STATEMENT OF THE CASE

This case arises from an accident on April 1, 2017, wherein Plaintiff, Britteny Chenet (Chenet), fell and injured her foot while walking to a residence at St. Edwards Subdivision Apartments to purchase "cold cups" for her children. Chenet alleges that she was forced to leave the sidewalk and walk in the grass due to the presence of bags of concrete on the sidewalk blocking her path to the residence. While she was walking in the grass, allegedly she stepped in a hole obscured by grass and fell.

On March 29, 2018, Chenet filed suit against Relators for damages sustained as a result of the fall. On January 22, 2019, Relators filed a motion for summary judgment on the grounds that Chenet could not carry her burden of proving that the hole on Relators' property constituted an unreasonable risk of harm. On March 26, 2019, the motion was denied following a hearing, and written judgment was signed to this effect on April 16, 2019. Relators are now before this court on writs seeking review of the trial court's ruling.

## SUPERVISORY RELIEF

The requirement of irreparable injury is met in this case in light of *Herlitz Constr. Co., Inc. v. Hotel Investors of New Iberia, Inc.*, 396 So.2d 878 (La.1981). When the overruling of an exception is arguably incorrect, when a reversal will terminate the litigation, and when there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictate that the merits of the

application for supervisory writs should be decided in an attempt to avoid the waste

of time and expense of a possibly useless future trial on the merits. *Id.*

## ON THE MERITS

In *Dauzat v. Curnest Guillot Logging Inc.*, 08-528, pp. 4-5 (La. 12/2/08), 995

So.2d 1184, 1186-1186, the supreme court explained (citations omitted):

> It is well-settled law that a landowner owes a duty to a plaintiff to discover any unreasonably dangerous conditions, and to either correct the condition or warn of its existence.
>
> Nonetheless, we have recognized that defendants generally have no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a visitor as it was to the landowner.
>
> In determining whether a condition is unreasonably dangerous, courts have adopted a four-part test. This test requires consideration of: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility, or whether it is dangerous by nature.

A person has a duty to see what should be seen and is bound to observe

whether a pathway is clear. *Carr v. City of Covington*, 477 So.2d 1202 (La.App. 1

Cir. 1985), *writ denied*, 481 So.2d 631 (La.1986). Regarding the yard of a residence,

the court in *Crucia v. State Farm Ins. Co.*, 98-1929, pp. 4-5 (La.App. 1 Cir. 9/24/99),

754 So.2d 270, 272-73, (footnotes omitted) explained:

> Not every minor imperfection or irregularity will give rise to liability. A premises defect must be of such a nature as to constitute a dangerous condition that would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. In *Wood v. Cambridge Mutual Fire Insurance Company*, [486 So.2d 1129,

1133 (La.App. 2 Cir. 1986)], the court set forth the standard applicable to a residence yard:

> The yard of a residence is not intended or expected to have a completely "table-top" smooth surface. Yards usually present minor hazards or conditions which could cause an unobservant and inattentive person to trip and fall. Yards can and usually do have irregularities and minor obstacles such as depressions, drains, faucets, trees, shrubs, and tree roots and are not intended or designed for use as a walkway without observation and care as are sidewalks and designated walkways. Such conditions do not amount to defects that present an unreasonable risk of injury . . . .

Although Chenet claims that she had to walk through the grass because concrete bags were on the sidewalk, Relators maintain that she cannot show that the grassy area constituted an unreasonably dangerous condition. Relators assert that the grassy area where Chenet fell was not intended to be a walkway and that there were no prior reported falls in the area. Further, Relators state that Chenet has not produced any evidence of the existence of concrete bags blocking the sidewalk, despite her testimony that she lost the phone that contained photographs of the accident site. Relators also rely on Chenet's admission that she was tending to her children at the time of the accident to contend that she was not watching where she was walking when she chose to cut through the grass to avoid the alleged obstruction. Therefore, Relators urge that they owed no duty to Chenet for the natural and expected conditions of the grassy area, which relators explain, was not intended or considered to be a walkway. She was free to return home via available walkways but ultimately decided to walk off the path into the grass.

In support of their argument, Relators cite *Davis v. Am. Legion Hosp.*, 06-608 (La.App. 3 Cir. 11/2/06), 941 So.2d 712, wherein the plaintiff stepped off the sidewalk to walk and fell over a storm drain embedded in the grass. The plaintiff alleged that he had to walk through a grassy area to enter the side door of the hospital because the main entrance to the hospital was locked. The hospital argued that the

grassy area was never considered a walkway and that it had no prior reports of any falls in the area. Relators stress that in that case this court was not swayed by the plaintiff's testimony that he was forced to step off the sidewalk into the grass to walk around to the side door because the front door was locked. Likewise, Relators similarly urge this court that the alleged existence of concrete bags in the instant case is immaterial to the issues presented.

Relators cite additional cases wherein the court found that the landowner was not liable for a pedestrian's injuries arising from a minor imperfection or irregularity. *See Lee v. Magnolia Garden Apartments*, 96-1328 (La.App. 1 Cir. 5/9/97), 694 So.2d 1142, *writ denied*, 97-1544 (La. 9/26/97), 701 So.2d 990 (a two-inch-deep and five-inch-long depression or hole in the lawn of the complex was not a defect causing an unreasonable risk of harm); *Moore v. St. Bernard Par. Police Jury*, 619 So.2d 719 (La.App. 4 Cir.), *writ denied*, 625 So.2d 1035 (La.1993) (muddy hole in the darkened front lawn of a group home did not pose an unreasonable risk of harm[1]).

In opposition, Chenet argues that Relators knew or should have known about the hole because it was their duty to exercise reasonable care on the premises; had the grass on the premises been properly cut and maintained, the hole would have been discovered prior to her fall. Further, even if she had not been tending to her minor children, Chenet maintains that the hole was not open and obvious since the grass was uncut. She also asserts that the hole was not just a minor hazard or condition, as it was large enough for her foot to fall into. Thus, she was not simply being unobservant and inattentive as Relators argue.

Chenet directs this court's attention to *Johnson v. New Orleans Dept. of Streets*, 94-1542 (La.App. 4 Cir. 2/23/95), 650 So.2d 1216, wherein the plaintiff

---

[1] The supreme court focused on the fact that the plaintiff acted unreasonably in choosing to traverse the grassy area, rather the aspects of the hole.

4

stepped into a hole while walking on a sidewalk. On appeal, the court held that contributory fault should not have been assessed against the plaintiff because the hole was extremely difficult to see. The court reasoned that the plaintiff was unfamiliar with the sidewalk and would not have noticed the hole covered by grass even if she had been fully concentrating on the walkway. Likewise, Chenet urges that she should not be held to a standard of "open and obvious" when she was unfamiliar with the terrain and may not have noticed the defect even if she had been looking down at the ground.

Next, Chenet distinguishes the cases cited by Relators. Unlike the plaintiff in *Lee*, 694 So.2d 1142, Chenet contends that she could not continue to her destination using the sidewalk due to the concrete bags covering the sidewalk. She had no choice but to go around the bags, whereas the *Lee* plaintiff chose to take a shortcut. The plaintiff in *Davis*, 941 So.2d 712, Chenet adds, stepped off the sidewalk into a grassy area when also attempting to use a shortcut. Chenet maintains that she did not take it upon herself to take a shortcut, but was rather forced to leave the sidewalk.

Regarding the four-part test discussed in *Dauzat,* 995 So.2d 1184, Chenet asserts that the third prong of the test – the cost of preventing the harm – should be given consideration, because given Relators' duty to maintain the premises, she contends that they would have been alerted to the hole. Further, she argues it would not cost much to fill the hole since it was filled in with concrete a short time after her fall. The fourth prong - "which considers the nature of the plaintiff's activities - Chenet states, should be considered because she could not reasonably be expected to walk though or over the bag to remain on the walkway. Chenet maintains that she left the walkway in order to walk around the bags and reach her destination, as any reasonable person would. As such, Chenet concludes that Relators' argument that

5

she carelessly left the sidewalk, thereby taking the risk of injuring herself, is without merit.

In reply, Relators argue that Chenet's self-serving allegations and testimony do not create a genuine issue of material fact that would prevent this court from granting their motion for summary judgment. Relators also contend that Chenet's reliance on *Johnson*, 650 So.2d 1216, is misplaced. Specifically, they point out that the court in *Johnson* held that plaintiff was not liable for stepping in a hole where she was unfamiliar with the area, the hole was located in the sidewalk itself (rather than the grass), and the hole was difficult to see." Relators assert, on the other hand, that Chenet is a former resident of St. Edwards Subdivision and admitted that she chose to walk through the grass to get to a stranger's apartment to purchase homemade frozen treats for her children. Further, Relators state Chenet still lives within walking distance of the subdivision. Unlike *Johnson*, Relators urge, there are no facts to suggest that they caused the hole in any way. As such, Relators conclude that the hole in the grassy area, which was not intended to be used as a walkway without care, did not present an unreasonable risk of harm.

Relators also refer to Chenet's testimony wherein she described and documented the path she took on the day of the accident, revealing that she veered off the sidewalk well before she encountered the concrete bags. As such, Relators maintain that Chenet's assertion that she was walking on the sidewalk up until she encountered the concrete bags is contrary to her testimony. Further, Relators state Chenet testified that she deliberately chose to cut through the middle of the grass to avoid the obstruction in the pathway.

Relators conclude that the existence of the concrete bags and the height of the grass are immaterial to the issue of whether a hole in the grass presented an

6

unreasonable risk of harm. Relators urge that there was a paved walkway for Chenet to turn around and return home.

Relators did not include a transcript of the hearing, and thus, the trial court's reasons for ruling are unknown. Relators do not deny that the concrete bags were on the sidewalk, in light of Chenet's testimony that the concrete bags blocked the entire width of the sidewalk. Relators do not claim that there was an open walkway that Chenet could have used to get to her intended destination, but instead argue that she could have turned around and walked back home. This option, however, would not have allowed her to reach her destination where she intended to purchase cold cups for her children.

Further, Relators did not provide any measurements of the hole other than Chenet's description of it being the size of a baseball. When Chenet was asked to give an estimate of the hole's diameter in inches, she responded, "I really don't know about much - - that much about diameter but it was just nice-sized, just broke - - broke my foot two (2) fraction [sic]." When asked about the depth of the hole, Chenet merely stated that it was deep. She was then asked:

Q    If this is eight and a half (8-1/2) by eleven (11) inches, was the
       hole wider than this or smaller than this - -

A    It was smaller, like - -

Q    - - in width?

A    It was just like it was - - it was - - I know it was big, but I couldn't
       tell because - - because grass was covering the hole up.

Q    Did you look at the hole after you fell?

A    I mean, my boyfriend when he took a picture see how - - how big
       and long it was. It was deep enough to break my foot.

In light of the facts presented by the parties and the related jurisprudence, we find that a genuine issue of material fact remains as to the whether the hole covered by grass presented an unreasonable risk of harm. As such, the allegation of a blocked

7

walkway, with no other designated path available to reach the destination, is relevant to the instant case, as well as the height of the grass disguising the hole. Accordingly, we find no error in the trial court's ruling denying summary judgment.

**<u>WRIT DENIED</u>.**